Julie E. Schwartz, Bar No. 260624
JSchwartz@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA  94304
Telephone:  650.838.4300
Facsimile:  650.838.4350

Ryan M. Mrazik (*pro hac vice forthcoming*)
RMrazik@perkinscoie.com
Lauren J. Tsuji, Bar No. 300155
LTsuji@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000

Attorneys for Nonparty
Google LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNIVERSAL LIFE CHURCH MONASTERY STOREHOUSE, a Washington non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>MAURICE KING, LEWIS KING, GLEN YOSHIOKA, DYLAN WALL, SARA WHITE, and AMERICAN MARRIAGE MINISTRIES, a Washington non-profit corporation,<br><br>Defendants. | N.D. Cal. Case No. 3:21-mc-80040<br>W.D. Wash. Case No. 2:19-cv-00301-RAJ<br><br>**NONPARTY GOOGLE LLC'S OPPOSITION TO DEFENDANT AND COUNTERCLAIMANT'S MOTION TO COMPEL AND MOTION TO TRANSFER AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:       April 5, 2021<br>Time:       10:00 a.m.<br>Courtroom:  TBD<br>Judge:      TBD |

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ..................................................................................................... 1

II.   STATEMENT OF ISSUES TO BE DECIDED ...................................................... 3

III.  STATEMENT OF FACTS ...................................................................................... 3

      A.    The Underlying Litigation................................................................................ 3

      B.    AMM's Subpoenas to Google.......................................................................... 4

IV.   ARGUMENT ......................................................................................................... 6

      A.    The Court Should Deny AMM's Motion to Compel ....................................... 7

            1.    The deposition testimony AMM seeks from Google is unreasonably
                  cumulative and duplicative and is available from other sources................ 7

            2.    Disclosure of the Google Analytics records is prohibited by the
                  SCA............................................................................................................ 10

            3.    AMM can obtain the Google Analytics records it seeks directly
                  from ULC.................................................................................................. 11

      B.    The Court Should Deny AMM's Motion to Transfer ......................................... 12

V.    CONCLUSION ..................................................................................................... 16

# TABLE OF AUTHORITIES

**Page**

**CASES**

*AngioScore, Inc. v. TriReme Med., Inc.*,
No. 12-cv-3393-YGR (JSC), 2014 WL 6706873 (N.D. Cal. Nov. 25, 2014) ........................12

*Audio MPEG, Inc. v. HP Inc.*,
No. 16-MC-80271-HRL, 2017 WL 950847 (N.D. Cal. Mar. 10, 2017)....................................7

*Beinin v. Ctr. for the Study of Popular Culture*,
No. C 06-2298 JW (RS), 2007 WL 832962 (N.D. Cal. Mar. 16, 2007) ...................................6

*CMB Expert, LLC v. Atteberry*,
No. 3:14-mc-51-B-BN, 2014 WL 2197840 (N.D. Tex. May 27, 2014) ..................................14

*Costco Wholesale Corp. v. Crane*,
No. 16-mc-80189-JSC, 2016 WL 5394115 (N.D. Cal. Sept. 27, 2016) ..................................16

*Dart Indus. Co. v. Westwood Chem. Co.*,
649 F.2d 646 (9th Cir. 1980).................................................................................................6

*E4 Strategic Sols., Inc. v. Pebble Ltd. P'ship*,
No. SA MC 15-00022-DOC, 2015 WL 12746706 (C.D. Cal. Oct. 23, 2015)........................15

*Fraserside IP LLC v. Gamma Ent.*,
286 F.R.D. 416 (N.D. Iowa 2012) .........................................................................................11

*Garden City Emps. Ret. Sys. v. Psychiatric Sols., Inc.*,
No. 13-238, 2014 WL 272088 (E.D. Pa. Jan. 24, 2014)....................................................14, 15

*Gonzales v. Google, Inc.*,
234 F.R.D. 674 (N.D. Cal. 2006).......................................................................................6, 15

*High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*,
161 F.R.D. 86 (N.D. Cal. 1995).............................................................................................6

*Intermarine, LLC v. Spliethoff Bevrachtingskantoor, B.V.*,
123 F. Supp. 3d 1215 (N.D. Cal. 2015) ...........................................................................7, 8, 9

*Kim v. NuVasive, Inc.*,
No. 11cv1370–DMS (NLS), 2011 WL 3844106 (S.D. Cal. Aug. 29, 2011)........................8, 9

*Mattel Inc. v. Walking Mountain Prods.*,
353 F.3d 792 (9th Cir. 2003)..................................................................................................8

*Moon Mountain Farms, LLC v. Rural Cmty. Ins. Co.*,
301 F.R.D. 426 (N.D. Cal. 2014)...........................................................................................15

-i-

1

2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

3

4

*Nidec Corp. v. Victor Co. of Japan*,
    249 F.R.D. 575 (N.D. Cal. 2007) ............................................................................11

5

*O'Grady v. Superior Ct.*,
    139 Cal. App. 4th 1423 (2006) ...................................................................................9

6

7

*Personalized Media Commc'ns, LLC v. Top Victory Elecs. (Taiwan) Co.*,
    No. 16-mc-80122-SK, 2016 WL 8542561 (N.D. Cal. Aug. 3, 2016).......................12

8

9

*Quon v. Arch Wireless Operating Co.*,
    529 F.3d 892 (2008).................................................................................................11

10

*Shopify (USA), Inc. v. Express Mobile, Inc.*,
    No. 19-MC-80251-TSH, 2019 WL 5893235 (N.D. Cal. Nov. 12, 2019).................7

11

12

*Smith v. Ardew Wood Prods., Ltd.*,
    No. C07–5641 FDB, 2008 WL 4837216 (W.D. Wash. Nov. 6, 2008).....................9

13

*Suzlon Energy Ltd. v. Microsoft Corp.*,
    671 F.3d 726 (9th Cir. 2011)....................................................................................11

14

STATUTES

15

16

18 U.S.C. § 2701 .............................................................................................................2

17

18 U.S.C. § 2702 ......................................................................................................10, 11

18

18 U.S.C. § 2710 ...........................................................................................................11

19

OTHER AUTHORITIES

20

Fed. R. Civ. P. 26 ..........................................................................................................12

21

Fed. R. Civ. P. 45 .................................................................................................. passim

22

Fed. R. Evid. 902(11) .....................................................................................................8

23

24

25

26

27

28

## I.    INTRODUCTION

Nonparty Google LLC ("Google") has been dragged into a contentious discovery dispute between two online marriage ordination services, Plaintiff Universal Life Church Monastery Storehouse ("ULC") and Defendant and Counterclaimant American Marriage Ministries ("AMM"). AMM has filed two motions directed to Google: the Motion to Compel Deposition Testimony and Documents ("Motion to Compel") and the Motion to Transfer the Motion to Compel to the Western District of Washington ("Motion to Transfer") (collectively, the "Motions").[1] Both should be denied: this is a party discovery dispute that should be resolved between AMM and ULC, and this Court is the appropriate forum to protect Google from AMM's burdensome subpoena, document requests, and deposition demand.

The underlying facts of the case appear to be as follows: AMM alleges that ULC infringed on AMM's trademark by redirecting traffic from the URL www.americanmarriageministries.com to ULC's websites and by making false, misleading, and/or defamatory statements regarding AMM. AMM believes that records related to ULCs Google Ads[2] and Google Analytics[3] accounts are relevant to its claims. There is no dispute that ULC has access to its own Ads and Analytics accounts. But instead of obtaining the records it seeks directly from ULC or pursuing the full scope of discovery remedies available against its counterparty, AMM has demanded these records and related deposition testimony from Google.

---

[1]  The Motion to Transfer is not a standalone motion but was filed as an attachment to the Motion to Compel. *See* Case No. 3:21-mc-80040, Dkts. 1, 1-4 (N.D. Cal.).

[2]  Google Ads is an online advertising platform that allows businesses to display advertisements when potential customers search for specific keywords on Google products and partner sites. *See* Google Ads Help, *About Google Ads*, https://support.google.com/google-ads/answer/6349091?visit_id=637509520887936919-2648430696&hl=en&rd=1 (last visited Mar. 15, 2021); Google Ads, *Discover How to Use Google Ads to Reach Your Goals*, https://ads.google.com/home/how-it-works/ (last visited Mar. 15, 2021).

[3]  Google Analytics is a cloud service that allows customers to collect data about their website traffic and use Google's tools to analyze that data and develop insights to make business decisions. *See Google Analytics*, https://analytics.google.com/analytics/web/provision/#/provision (last visited Mar. 15, 2021); Google Marketing Platform, *Analytics*, https://marketingplatform.google.com/about/analytics/benefits/ (last visited Mar. 15, 2021).

As to the records and deposition testimony related to Ads, despite the fact that this information is equally available to ULC, Google has nonetheless produced responsive records, along with a Certificate of Authenticity and Declaration of Custodian of Records. Google has also repeatedly met and conferred with counsel for AMM and offered to provide an additional declaration to answer any outstanding questions regarding the Ads production, in lieu of a deposition. Thus, the deposition testimony AMM seeks is unnecessary and unwarranted. As to the records related to Analytics, Google has repeatedly explained to counsel for AMM that, unlike Ads data, it cannot disclose these records consistent with the federal Stored Communications Act ("SCA"), 18 U.S.C. § 2701, *et seq.*, and that these records must instead be obtained from ULC. Nevertheless, AMM remains relentless in its misguided discovery campaign.

On the same day nonparty discovery was scheduled to close in the underlying matter,[4] AMM filed the Motion to Compel and Motion to Transfer. The Motion to Compel demands that Google (1) submit to a deposition to explain ULC's Ads data, the method by which Google searched for and produced ULC's Ads data, and the Ads and Analytics products generally and (2) produce the content stored in ULC's Analytics account, notwithstanding that AMM has not identified the specific content they seek, that any content in the account is available to ULC, and that disclosure of these records is prohibited by the SCA. The Motion to Transfer demands that this matter be heard not in "the district where compliance is required"—which is the Northern District of California— but instead in the Western District of Washington.

For brevity, Google hereby files this combined opposition, and respectfully requests that the Court deny AMM's Motion to Compel and Motion to Transfer, and direct AMM to obtain any records and information it believes it still requires directly from ULC.

---

[4] Fact discovery in the underlying litigation was initially set to close on May 17, 2020. *See Universal Life Church Monastery Storehouse v. King*, No. 2:19-cv-00301-RAJ, Dkt. 22 (W.D. Wash.). Since then, the fact discovery deadline has been extended several times, including most recently to March 1, 2021. *Id.*, Dkt. 191. On February 26, AMM filed yet another motion to extend the deadline for nonparty discovery. *Id.*, Dkt. 193. ULC has objected to that motion, which is currently pending. *Id.*, Dkt. 195. Accordingly, it remains unclear whether the discovery deadline in the underlying litigation will even allow for AMM's requested deposition and additional document production.

## II.    STATEMENT OF ISSUES TO BE DECIDED

1. Should Google be compelled to provide deposition testimony explaining ULC's Ads and Analytics records?

2. Should Google be compelled to produce the content of ULC's Google Analytics accounts, where disclosure of these documents would violate the SCA and the records are more readily available from ULC?

3. Should the Motion to Compel, which is properly before this Court, be transferred to the Western District of Washington?

## III.    STATEMENT OF FACTS

### A.    The Underlying Litigation

In March 2019, ULC filed suit against AMM in the U.S. District Court for the Western District of Washington. *See Universal Life Church Monastery Storehouse v. King*, No. 2:19-cv-00301-RAJ (W.D. Wash.).[5] Although Google is not a party to that litigation, it understands that ULC and AMM both provide online ordination services for persons seeking to become ministers and wedding officiants; that ULC has accused AMM of violating the Lanham Act and the Washington Consumer Protection Act, and of defamation *per se* for statements contained on AMM's websites; and that AMM has filed counterclaims arising from ULC's alleged use of its trademark. Dkts. 27, 28.

The docket in the underlying litigation reflects multiple rounds of discovery motions between ULC and AMM. *See, e.g.*, Dkts. 37, 53, 62, 64, 66. In April 2020, AMM moved to compel ULC to produce the very records sought by AMM's subpoena to Google, including documents reflecting ULC's website analytics and marketing efforts. *See* Dkt. 62. Thereafter, ULC agreed to produce relevant Analytics reports for each of the webpages that allegedly used AMM's trademark, but objected to creating additional custom reports. *See* Dkt. 69. The Analytics reports that ULC produced apparently reflect "the number of users accessing each page between January 1, 2010 and April 21, 2020, whether the user made a purchase, and the dollar value of the purchase." *See* Dkt. 127 at 3. According to AMM, "the production of summary reports generated based on parameters and instructions chosen by ULC" was insufficient. *Id*. at 3-4. Instead, AMM sought the production

---

[5] Unless otherwise indicated, citations to "Dkt." refer to documents filed in the underlying litigation pending in the Western District of Washington.

of the *underlying* Analytics data "in read-only form." *Id.* at 6. In July 2020, the court granted AMM's motion to compel and directed ULC to supplement its production with the underlying data from its Analytics account. *Id*. Since then, AMM has made no further attempt to compel additional discovery from ULC, or to seek discovery sanctions or other relief in the underlying litigation.

**B.      AMM's Subpoenas to Google**

On April 7, 2020, before filing its motion to compel against ULC, AMM served Google with a subpoena duces tecum and subpoena for deposition testimony. *See* Declaration of Sheeba Roberts in Support of AMM's Mot. to Compel Deposition Testimony and Production of Documents from Google ("Roberts Decl."), Exs. 1, 2. The subpoenas demanded that Google produce the contents of ULC's Ads and Analytics accounts and submit to a deposition regarding these documents. *Id*. Google timely objected to the subpoenas on April 21, 2020. *Id.*, Ex. 3. Its objection letter explained that (1) the requested information and records are within the possession, custody, and control of a party to the litigation—namely, ULC; (2) the requested deposition testimony is unduly burdensome and unnecessary; and (3) the subpoenas failed to provide information sufficient to identify the relevant Ads and Analytics accounts. *Id*.

On August 24, 2020, Google met and conferred with counsel for AMM, reiterated the objections set forth in its letter, and memorialized the conversation in a letter the next day. *Id*. Ex. 5. Google explained that it could not search for responsive records based on an account holder's name alone, and that in order to identify the relevant Ads and Analytics accounts, it would require additional identifiers. *Id*., Ex. 5, 6.

On December 3, 2020, after AMM provided three email addresses they believed could be associated with a relevant Ads account (george_galaxy@hotmail.com, brian@themonastery.org, dallas@themonastery.org), and after Google provided notice to any affected email addresses consistent with its policies, Google produced records including an Ad Report, Keyword Report, and billing detail, accompanied by a Certificate of Authenticity and Declaration of Custodian of

-4-

Records.[6] *Id.*, Ex. 7; *see also* Mot. to Compel at 7. Google did not produce any Analytics records, as disclosure of those records is prohibited by the SCA.

On December 14, 2020, AMM's counsel informed Google that despite its detailed production, AMM nevertheless intended to seek deposition testimony as to the Ads records. Roberts Decl., Ex. 9. On December 22, 2020, Google reiterated its objections and explained that the Certificate of Authenticity and Declaration of Custodian of Records obviated any need for Google to testify regarding the Ads production. Google also explained that AMM's attempt to seek the equivalent of expert testimony from Google's records custodian was improper. Google offered multiple alternatives in an attempt to reach a resolution, and summarized those in an email the next day, December 23rd. *Id.* Specifically, Google directed AMM's counsel to its publicly-available Google Ads Help Center,[7] offered to answer counsel's questions regarding the Ads documents it had produced, and even offered to provide an additional declaration in lieu of a deposition. *Id.*

On December 30, 2020, AMM's counsel informed Google that, notwithstanding the availability of these alternatives, she intended to seek "a deposition of the person(s) who pulled the records produced by Google" to "inquire about the process utilized for pulling these records" and obtain "clarification of the data that was pulled." *Id.* Counsel also renewed her request for ULC's Analytics reports, notwithstanding the SCA, but did not identify specifically which reports she sought to run. *Id.*

On January 7, 2021, AMM filed a motion to compel documents and deposition testimony from Google in the Western District of Washington. *See* Dkt. 172.  On January 12, 2021, counsel for Google sent counsel for AMM a letter reiterating the same objections Google had made since April 2020—specifically, that the requested deposition testimony is unduly burdensome and

---

[6] Counsel for AMM has *never* provided Google with either (1) ULC's Ads Customer ID or (2) ULC's Universal Analytics Number. Instead, counsel provided three email addresses she believes were "likely" used by ULC. *See* Roberts Decl., Ex. 6. Google does not have any way of verifying whether the Ads or Analytics accounts associated with these email addresses are *in fact* used by ULC. However, for ease of reference, Google hereinafter refers to these accounts as the "ULC Ads" and "ULC Analytics" accounts.

[7] *See* Google Suppot, *Google Ads Help*, https://support.google.com/google-ads/?hl=en#topic=9803759 (last visited Mar. 15, 2021).

unwarranted, that ULC's Analytics records are equally available to ULC, and that the SCA prohibits Google from disclosing these records pursuant to a subpoena. Roberts Decl., Ex. 10. Google also explained that Federal Rule of Civil Procedure 45(d)(2)(B)(i) requires any motion to compel to be brought in the Northern District of California. *Id*. Google asked AMM to withdraw its motion, and AMM did so on January 14, 2021. *See* Dkt. 176; *see also* Roberts Decl., Ex. 11.

On January 27 and February 12, 2021 Google's counsel met and conferred with AMM's counsel and repeated the grounds for Google's objections. *See* Roberts Decl., Ex. 12.  Despite Google's repeated objections and its efforts to reach a compromise, AMM remains undeterred.

On March 1, 2021, more than a month after withdrawing its initial motion in the Western District of Washington and without explanation for the delay, AMM filed its Motion to Compel and Motion to Transfer with this Court. Google's opposition follows.

## IV.    ARGUMENT

AMM's Motions disregard the significant limits that the Federal Rules of Civil Procedure place on nonparty discovery. *See* Fed. R. Civ. P. 45(d)(1) ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."). The Ninth Circuit has long made clear that nonparties are entitled to even greater protection from the burdens of discovery than parties to the underlying litigation. *See, e.g.*, *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980); *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995) ("[T]he Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts."). Courts consider this distinction in determining "the propriety of a nonparty's refusal to comply with a subpoena 'by balancing the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena.'" *Beinin v. Ctr. for the Study of Popular Culture*, No. C 06-2298 JW (RS), 2007 WL 832962, at *2 (N.D. Cal. Mar. 16, 2007) (*quoting Gonzales v. Google Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006)). Here, that balance tips decisively against AMM. The documents that AMM demands from Google are in the possession of a party to the litigation and their disclosure by

Google is barred by the SCA. The deposition that AMM demands from Google is unduly burdensome and entirely unnecessary. And, because Google and its records custodians are located in Mountain View, California, the Northern District of California is the proper district to resolve this dispute.

**A.      The Court Should Deny AMM's Motion to Compel**

**1.      The deposition testimony AMM seeks from Google is unreasonably cumulative and duplicative and is available from other sources.**

Courts routinely refuse to enforce deposition subpoenas to nonparty service providers where, as here, the testimony sought would be duplicative of records that have already been produced, or when a party or public source can just as readily provide the same information. *See, e.g.*, *Intermarine, LLC v. Spliethoff Bevrachtingskantoor, B.V.*, 123 F. Supp. 3d 1215 (N.D. Cal. 2015); *Shopify (USA), Inc. v. Express Mobile, Inc.*, No. 19-MC-80251-TSH, 2019 WL 5893235, at *3 (N.D. Cal. Nov. 12, 2019) (quashing deposition subpoena where testimony could be obtained from a better source); *Audio MPEG, Inc. v. HP Inc.*, No. 16-MC-80271-HRL, 2017 WL 950847, at *6 (N.D. Cal. Mar. 10, 2017) (quashing deposition subpoena where information sought could be obtained from parties to the litigation).

As discussed above, Google already has produced documents related to ULC's Ads account. Roberts Decl. Ex. 7. AMM now seeks from Google deposition testimony explaining "the process utilized for extracting the data from ULC's [Ads] account"[8] and "the data Google extracted," and describing "the operation of the Google [Ads] product as context for understanding the Google [Ads] documents." Mot. to Compel at 7. To the extent this information has any relevance to the underlying case, it is readily obtainable from publicly available sources, including the Google Ads Help Center. Moreover, at no time during the meet and confer process has AMM offered any explanation for why it requires this information from Google, why the Google Ads Help Center does not answer its questions, why an expert cannot address its questions instead, or why the Certificate of Authenticity and Declaration of Custodian of Records that Google has already

---

[8] To the extent AMM intends to seek information regarding the process by which Google's legal team responds to discovery requests, that information is not only irrelevant, but also privileged.

provided are inadequate. AMM's Motion to Compel simply claims, without offering any specific reason, that a deposition is somehow necessary.

This Court addressed a similar situation in *Intermarine*, where it quashed a deposition subpoena which purported to require nonparty Dropbox to provide deposition testimony explaining the "nature and format" of previously-produced data and documents and describing Dropbox's business, technology, and data practices. 123 F. Supp. 3d at 1217. The Court held that deposition testimony was improper for several reasons, all of which apply with equal force here:

*First*, the Court explained that when a Certificate of Authenticity has been provided, the records are already admissible under Federal Rule of Evidence 902(11), and any further testimony concerning their authenticity would be "duplicative and unnecessarily burdensome." *Id.* at 1218. Indeed, Rule 902(11) exists for this very reason—"to obviate the need for live witnesses to parade to the stand to support the admission into evidence of business records." *Id.* at 1217-18. *Second*, the Court explained that testimony to "explain the records" is unnecessary when production included "text files explaining the produced records." *Id.* at 1218. *Third*, the Court found that where information on "how files are stored and maintained" was publicly available, the requesting party or its expert "could review the [] website in order to provide the testimony, or the [court] could take judicial notice of the same." *Id. Fourth*, the court explained that a requesting party is "not entitled to elicit expert testimony [], particularly where it can retain its own expert witness to explain these issues." *Id.*; *see also, e.g.*, *Mattel Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 814 (9th Cir. 2003) (affirming district court order quashing subpoena for improper expert testimony from nonparty); *Kim v. NuVasive, Inc.*, No. 11cv1370–DMS (NLS), 2011 WL 3844106, at *4-5 (S.D. Cal. Aug. 29, 2011) (quashing subpoena for records and testimony to protect nonparty from "being required to provide expert advice or assistance without proper compensation" and noting that "such opinion could objectively be given by a retained expert and is not unique to [nonparty]") (internal quotation marks and citation omitted).

Here, as in *Intermarine*, Google's production of the Ads data included a Certificate of Authenticity and a Declaration of Custodian of Records explaining the documents and the method

by which they were identified and extracted. And Google has repeatedly directed counsel for AMM to its Ads Help Center, which contains a complete explanation of the contents of these records, how they are maintained, and how the product functions—in short, the same "data regarding web traffic, online transactions, search engine optimization, and online advertising" that AMM claims are "critical to this case." Mot. to Compel at 7-8. AMM has yet to explain why it requires such testimony *from Google*, and why the same testimony cannot be provided by its own expert. Further, requiring Google to prepare a corporate representative to sit for a deposition on these topics would be unduly burdensome. Google offers a number of services that allow users to create, store, and export records, and "should not bear the burden of providing testimony in all cases in which such records are at issue." *Intermarine*, 123 F. Supp. 3d at 1219; *see also O'Grady v. Superior Ct.*, 139 Cal. App. 4th 1423, 1446 (2006) ("Responding to . . . routine subpoenas would indeed be likely to impose a substantial new burden on service providers.").

Finally, Google questions AMM's genuine need for this testimony. AMM suggests that the deposition testimony it seeks will bear on ULC's claims and AMM's counterclaims, which it describes as involving "false, defamatory, or misleading statements" and "misleading, deceptive, and unauthorized use of AMM's trademark," respectively. Mot. to Compel at 7. AMM also suggests that the testimony will "illuminate data regarding web traffic, online transactions, search engine optimization, and online advertising that are critical to this case." *Id.* at 7-8. But AMM has yet to explain how Google's records custodian might shed light on any of these topics, and indeed, its records custodian is plainly not qualified to do so.

Before seeking a deposition from *anyone*—let alone a nonparty—a party must assess whether the deposition is truly necessary. *Smith v. Ardew Wood Prods., Ltd.*, No. C07–5641 FDB, 2008 WL 4837216, at *1-2 (W.D. Wash. Nov. 6, 2008) ("It is important for all parties to understand that prior to taking any deposition they must always assess whether or not a deposition of that witness is truly necessary, based in part upon the time and expense that even a single deposition incurs for all parties involved."). Here, AMM cannot show that the deposition it seeks from Google is necessary. In the absence of such a showing, the Motion should be denied.

2.      **Disclosure of the Google Analytics records is prohibited by the SCA.**

The SCA generally prohibits service providers such as Google from disclosing content that is stored and processed on an account holder's behalf in response to a subpoena, absent specific enumerated exceptions. *See* 18 U.S.C. § 2702, *et seq*. Here, ULC allegedly had Analytics enabled on its website, and Google allegedly stored ULC's resulting data and reports in its account. These records are subject to the SCA's general prohibition on the disclosure of content, and AMM cannot establish that any exceptions to this general prohibition apply here.

Google Analytics is a cloud service that allows customers to collect data and generate customized reports regarding traffic to their websites and other metrics, and to store, process, and analyze that data and information in their accounts.[9] Analytics customers can log into their accounts to create "Custom Reports" based on a variety of dimensions and metrics—for example, a customer could create a report showing the number of sessions (*i.e.*, individual visits to a website) that originate from a given city, or the average length of each session.[10] Custom Reports created by the customer are stored in their account, and can be modified, exported, or deleted at any time.[11] In this regard, Analytics records are no different than the other types of content created by users, which Google stores on the users' behalf, such as Google Drive and Gmail.

The SCA prohibits Google from disclosing the content of ULC's Analytics account in response to a subpoena unless a statutory exception is met. *See* 18 U.S.C. § 2702(b)(1)-(9). AMM's counsel does not address this prohibition substantively, and instead attempts to circumvent Google's objections *not* by providing a different interpretation of the SCA, but by admitting that she does not understand the SCA or how it applies to Analytics. Mot. to Compel at 10 ("The SCA does not prohibit Google from producing the requested documents in this case pursuant to a

---

[9] *See Google Analytics*, https://analytics.google.com/analytics/web/provision/#/provision (last visited Mar. 15, 2021);

[10] *See* Analytics Help, *About Custom Reports*, https://support.google.com/analytics/answer/1033013?hl=en&ref_topic=1012046 (last visited Mar. 15, 2021); *see also* Analytics Help, *Dimensions and metrics*, https://support.google.com/analytics/answer/1033861 (last visited Mar. 15, 2021).

[11] *See* Analytics Help, *Create and manage Custom Reports*, https://support.google.com/analytics/answer/1151300?hl=en&ref_topic=1012046 (last visited Mar. 15, 2021).

-10-

lawfully issued subpoena, as AMM does not seek personally identifiable information. . . .").[12] AMM's attempted analogy to Ads also fails because the two services are entirely distinct from one another. Unlike Analytics reports—which, as discussed above, are *necessarily* generated and stored by individual customers—the Ads records produced in this case are Google's own business records, do not contain user-generated content, and were not stored at a user's request. Thus, the fact that Google produced Ads records does not change the nature of Analytics records under the SCA. *See Quon v. Arch Wireless Operating Co.*, 529 F.3d 892, 900-903 (2008) (explaining that application of the SCA turns on what "function" the service provider fulfilled with regard to the user), *rev'd and remanded on other grounds*, 130 S.Ct. 2619 (2010).

### 3.    AMM can obtain the Google Analytics records it seeks directly from ULC.

Instead of seeking to compel Google to produce records that it is prohibited from disclosing under the SCA, AMM should obtain the Analytics records directly from the account holder—ULC.[13] *See, e.g., Suzlon Energy Ltd. v. Microsoft Corp.*, 671 F.3d 726, 731 (9th Cir. 2011) (noting that the inability to obtain documents that are covered by the SCA from a service provider does not affect the ability to obtain the documents directly from the account holder). This solution is also entirely consistent with AMM's obligation to avoid unnecessarily burdening a nonparty. *See, e.g., Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) (explaining that in discovery, "[t]here is simply no reason to burden nonparties when the documents sought are in possession of the party defendant"); *Fraserside IP LLC v. Gamma Ent.*, 286 F.R.D. 416, 421 n.4 (N.D. Iowa 2012) (holding that party's Google Analytics information should be produced by the party and quashing subpoena seeking this information from Google as "cumulative and

---

[12] To be clear, the presence or absence of "Personally Identifiable Information" (PII) is not what determines whether data is protected by the SCA. PII is mentioned in only one section of the SCA, Section 2710, which is titled "wrongful disclosure of video tape rental or sale records." 18 U.S.C. § 2710. This section is, quite obviously, not relevant to this action. Instead, the applicable provision of the SCA for purposes of this matter is Section 2702.

[13] Alternatively, if AMM is able to verify ULC's Universal Analytics Number, identify the exact reports it seeks, and obtain consent from ULC, then Google could produce any reports stored in the account consistent with the SCA's "lawful consent" exception. *See* 18 U.S.C. § 2702(b)(3). However, at no time to date has AMM indicated that ULC has consented or would consent to such a disclosure, nor does it appear that AMM has made any effort to compel ULC to consent.

unnecessary"); *cf.* Fed. R. Civ. P. 26(b)(2)(C)(i) (court "must" limit discovery if the discovery sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive").

Here, AMM seeks analytic reports and data generated by and stored in ULC's Analytics account. *See* Roberts Decl., Ex. 1. ULC, as the account holder, can create and download its own customized reports.[14] In fact, ULC has already been ordered to produce these very reports in the underlying litigation. *See* Dkt. 127. Google has raised this objection many times since it was served with AMM's subpoenas in April 2020, but AMM has yet to explain why it did not make any further efforts to obtain the records it seeks directly from ULC before coming to Google. *See* Roberts Decl., Exs. 4, 6, 7, 8, 9, 11, 12. If ULC refuses to turn over these records, despite already having been ordered to do so by the Western District of Washington (*see* Mot. to Compel at 9; *see also* Dkt. 127), then AMM's recourse lies in a motion for an adverse inference or discovery sanctions against *ULC—not* a motion to compel directed to nonparty Google.

**B.    The Court Should Deny AMM's Motion to Transfer**

Federal Rule of Civil Procedure 45(d)(2)(B)(i) provides that any motion to compel compliance with a subpoena must be brought in the "court for the district where compliance is required[.]" This requirement reflects the fact that "local resolution of disputes about subpoenas" is crucial to "protect local nonparties" subject to subpoenas. Fed. R. Civ. P. 45(f), Advisory Comm. Note to 2013 Amend.; *see also, e.g.*, *Personalized Media Commc'ns, LLC v. Top Victory Elecs. (Taiwan) Co.*, No. 16-mc-80122-SK, 2016 WL 8542561, at *2 (N.D. Cal. Aug. 3, 2016) (explaining that "nonparties should be burdened as little as practicable by litigation in which they are not involved, and local resolution of the motion will typically impose a lighter burden"); *AngioScore, Inc. v. TriReme Med., Inc.*, No. 12-cv-3393-YGR (JSC), 2014 WL 6706873, at *2 (N.D. Cal. Nov. 25, 2014) (noting that "[t]he amendments to the rule were designed to protect the subpoenaed party"). Where, as here, the target of a subpoena does not consent to transfer, the party requesting

---

[14] *See* Analytics Help, *Export and share reports*, https://support.google.com/analytics/answer/1038573?hl=en (last visited Mar. 15, 2021)

transfer bears the burden of demonstrating the existence of "exceptional circumstances" warranting transfer. *See* Fed. R. Civ. P. 45(f).

In this case, there can be no dispute that the Northern District of California is the district where compliance is required—Google is located and has its principal place of business in Mountain View, California; its records custodians are located in this district; and any deposition or production of documents would also occur in this district. *See* Fed. R. Civ. P. 45(c)(1)(A), (c)(2)(A), (d)(2)(B)(i).[15] Nor is there anything exceptional about AMM's Motion to Compel that would require this Court, which is better situated to protect the interests of local nonparty Google, to transfer it to the Western District of Washington. AMM has yet to identify any reason why this Court is not capable of resolving the discovery dispute that is properly before it and each of the purported grounds set forth in AMM's Motion to Transfer is unavailing:

*First*, while AMM claims that this dispute involves "complex technical data" (Mot. to Transfer at 6), in reality, the underlying litigation concerns a straightforward dispute between competitors in the market for online ordination services. In any event, even if the dispute does involve technical questions, resolution of AMM's Motion to Compel does not require the Court to delve into those questions—instead, the Court need only assess whether the information sought by AMM's subpoenas exceeds Rule 45's limits on nonparty discovery. For the reasons discussed above, it does.

*Second*, while AMM suggests that the Western District of Washington is familiar with the related discovery disputes between the parties (*id.* at 6-7), it conveniently omits the fact that these disputes were not resolved by the judge who is currently assigned to the underlying action. On January 25, 2021, Judge Robert S. Lasnik—who had until then presided over this case since its

---

[15] In addition, Google's Terms of Service, which govern the relationship between Google and its users, provide that "California law will govern all disputes arising out or relating to these terms, service-specific additional terms, or any related services, regardless of conflict of laws rules" and will be "resolved exclusively in the federal or state courts of Santa Clara County, California[.]" *See Google Terms of Service*, https://policies.google.com/terms?hl=en-US#toc-problems (last visited Mar. 15, 2021). All users consent to personal jurisdiction in these courts. Therefore, adjudicating this motion in the Northern District of California is also consistent with the expectations that the affected user—here, ULC—would have by virtue of agreeing to Google's Terms of Service.

inception—recused himself and the case was reassigned to Judge Richard A. Jones. *See* Dkt. 185. Judge Jones has yet to issue any substantive orders in that case, and respectfully, there is no reason to believe that he is any more familiar with the merits of AMM's Motion to Compel than this Court. And in any event, courts routinely decline to transfer motions to compel nonparty discovery, even where the issuing court "undeniably has greater familiarity with the Underlying Action and plaintiffs' theory of liability." *See, e.g.*, *Garden City Emps. Ret. Sys. v. Psychiatric Sols., Inc.*, No. 13-238, 2014 WL 272088, at *3 (E.D. Pa. Jan. 24, 2014); *see also CMB Expert, LLC v. Atteberry*, No. 3:14-mc-51-B-BN, 2014 WL 2197840, at *2 (N.D. Tex. May 27, 2014) (denying transfer even though "the underlying action is 'fairly complex'"). Nor can it be said that the underlying litigation has advanced to such a point that this Court's ruling would "disrupt[] the issuing court's management of the underlying litigation," as there are no substantive motions pending, the deadline for party discovery has long passed, and the deadline for nonparty discovery remains uncertain. *See* Fed. R. Civ. P. 45, Advisory Comm. Note to 2013 Amend.

*Third*, while AMM claims that this Court's ruling on the Motion to Compel would result in duplication of efforts and lead to inconsistent rulings because the Western District of Washington has "heard and decided multiple motions . . . specifically addressing [AMM's] subpoenas to Google" (Mot. to Transfer at 8), this is inaccurate and misleading. To the contrary, the Western District of Washington has yet to consider *any* motions seeking to enforce AMM's subpoenas *to Google*.[16] As to the "multiple motions regarding case management" that AMM cites (Dkts. 130, 171, 191), all are merely orders extending deadlines for party and nonparty discovery. As to the "discovery orders" (Dkts. 113, 127, 128), two of the three do not relate to nonparty subpoenas at all, but instead, involve rulings on requests *to ULC* for its financial and corporate records, including its Analytics records. *See* Dkts. 113, 127. Specifically, the second order commands *ULC* to produce Analytics records for its websites. *See* Dkt. 127. The third order denying ULC's Motion for Protective Order notes that "[m]uch of the information sought from [nonparties] is duplicative of

---

[16] While AMM initially filed its Motion to Compel Deposition Testimony and Production of Documents from Google in the Western District of Washington, it withdrew that motion just days later, before any response was filed and before the court took any action. *See* Dkts. 172, 176.

-14-

that which AMM sought directly from ULC in discovery," and that "[w]hen ULC objected to producing responsive documents, AMM turned to third-parties who held similar (if not source) materials." Dkt. 128 at 7. ULC did not raise, and that order does not consider, the arguments that Google raises here in response to AMM's Motion to Compel—*i.e.*, that the deposition testimony AMM seeks from Google is unreasonably cumulative and duplicative, and that the SCA prohibits disclosure of the Analytics records.[17] *Id.* In short, the Western District of Washington has never ruled on the propriety of the subpoenas to *Google* or held that *Google* is required to turn over the documents requested by AMM.

*Finally*, AMM's suggestion that Google's custodian of records could sit for a deposition remotely via video conference, such that the deposition involves "no travel burden" is unavailing. *See* Mot. to Compel at 8. As discussed above, requiring Google to prepare a corporate representative for a deposition is burdensome in itself, and this Court is best situated to protect Google from that burden.

AMM's Motion to Transfer cites a number of cases in support of its claim that the Motion to Compel should be heard in the Western District of Washington. But all are readily distinguishable: In *E4 Strategic Sols., Inc. v. Pebble Ltd. P'ship*, No. SA MC 15-00022-DOC (DFMx), 2015 WL 12746706 (C.D. Cal. Oct. 23, 2015), there was no dispute that the arguments raised in the district in which compliance was required were the same as those made in a separate motion in the district where the case was pending. *Id.* at *3. Similarly, in *Moon Mountain Farms, LLC v. Rural Cmty. Ins. Co.*, 301 F.R.D. 426 (N.D. Cal. 2014), a related motion to compel was filed in the same district where the case was pending, which concerned a subpoena seeking similar information from another nonparty. *Id.* at 429. Here, in contrast, the Western District of Washington has never ruled on any motion to compel as to Google or any similarly situated nonparty. *See E4*, 2015 WL 12746706, at *4 ("[A]n overlap in 'concerns of relevance that are almost certainly in common with the myriad discovery disputes in the underlying litigation . . . is an insufficient reason, standing alone, to warrant transfer of the motions.'") (citation omitted); *Garden City*, 2014 WL

---

[17] The court noted that the records sought from ULC were "relevant and necessary," but did not purport to evaluate the propriety of obtaining these records from a nonparty. *See* Dkt. 128 at 7.

-15-

272088, at *3 n.3, *6 (denying transfer where moving party failed to "identify any disputes similar to the one before this Court"). Finally, *Costco Wholesale Corp. v. Crane*, No. 16-mc-80189-JSC, 2016 WL 5394115 (N.D. Cal. Sept. 27, 2016) involved a dispute as to the proper scope of *an existing order*, made by the court in the district where the case was pending, compelling nonparty deposition testimony. There, the reviewing court determined that transfer was appropriate because the issuing court was "in the best position to interpret the full scope and meaning of that order." *Id.* at *2. Here, no such order exists.

Were the circumstances described by AMM found to be "exceptional," *every* litigant seeking to compel a nonparty's compliance with a subpoena would be permitted to seek compliance in the district where the case is pending, rather than where compliance is required. Rule 45 would be rendered ineffective, and its protection of nonparties meaningless. As AMM has not met its burden of showing that exceptional circumstances outweigh Google's interests in obtaining local resolution of AMM's Motion to Compel, this Court should deny AMM's Motion to Transfer.

## V.    CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court deny AMM's Motion to Compel and Motion to Transfer.

1

DATED:  March 15, 2021                              **PERKINS COIE LLP**

2

3

By:  */s/ Lauren J. Tsuji*

4                                                         Julie E. Schwartz, Bar No. 260624
                                                          JSchwartz@perkinscoie.com

5                                                         PERKINS COIE LLP
                                                          3150 Porter Drive

6                                                         Palo Alto, CA  94304
                                                          Telephone:  650.838.4300

7                                                         Facsimile:  650.838.4350

8

9                                                         Lauren J. Tsuji, Bar No. 300155
                                                          LTsuji@perkinscoie.com

10                                                        Ryan T. Mrazik (*pro hac vice
                                                          forthcoming*)

11                                                        RMrazik@perkinscoie.com
                                                          PERKINS COIE LLP

12                                                        1201 Third Avenue, Suite 4900
                                                          Seattle, WA  98101-3099

13                                                        Telephone:  206.359.8000
                                                          Facsimile:  206.359.9000

14

15                                                        Attorneys for Nonparty
                                                          Google LLC

16

17

18

19

20

21

22

23

24

25

26

27

28

-17-